IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD S. YOUNG, | : | CIVIL ACTION |
| | : | NO. 08-2164 |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LOUIS S. FOLINO, et al., | : | |
| | : | |
| Respondents. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    DECEMBER 22, 2009

Before the Court is Petitioner Edward Young's
("Petitioner") Petition for a Writ of Habeas Corpus pursuant to
28 U.S.C. § 2254 (the "Petition"). For the reasons that follow,
the Petition will be dismissed.


I.    **BACKGROUND**

A.    Factual Background

On June 28, 2001, following a jury trial in the Court
of Common Pleas of Lehigh County, Pennsylvania, Petitioner was
convicted of first degree murder, robbery, theft by unlawful
taking, unauthorized use of an automobile, abuse of a corpse, and
tampering with physical evidence. (Rep. & Rec. 2.) The
following facts were presented at Petitioner's trial. On August
11, 2000, Petitioner and his companions, Colleen Temples

1

("Temples") and Shawn Gehris ("Gehris") purchased cocaine base ("crack") from Koehane Davis ("Davis") on two separate occasions and consumed the crack, along with some beer and marijuana, at the Travelodge Motel in Coopersburg, Pennsylvania (the "Motel") where Petitioner was staying with Temples. Commw. v. Young, No. CR-3508-2000, Mem. Op. at *2-3 (Pa. Commw. Ct. Aug. 2, 2006) ("Young I"). After smoking the crack which they had purchased, Petitioner and Gehris discussed going back to buy crack from Davis for a third time, but instead planned to rob Davis of his drugs and money. Id. at *3. Petitioner's plan to execute the robbery was that he and Gehris would cover their faces with towels, enter the motel room where Davis was staying, steal Davis' drugs and cash, and escape by stealing Davis' car. Id. Petitioner and Gehris traveled to the motel were Davis was staying, but Gerhis refused to go through with the planned robbery and parted ways with Petitioner. Id. at *4. Petitioner returned to the Motel and told Temples that he decided against committing the planned robbery due to the presence of potential witnesses in the area. Id. After this conversation Temples went to sleep. Id.

Temples was awakened by a loud gunshot and observed Davis' body "lying next to the bed with blood coming out of his face . . . and show[ing] no signs of life." Id. Petitioner instructed Temples that they had to leave the Motel immediately,

at which point Petitioner dragged Davis' body outside of the Motel and placed it in the backseat of Davis' car. Id. While absconding from the scene with Davis' body, Petitioner showed Temples a distinctive pendant that he had taken from Davis' person. Id. at *5. While searching for a location to dispose of Davis' body, Petitioner noticed that Davis appeared to be breathing. Id. Upon realizing this, Petitioner pulled the car over and shot Davis three additional times. Id. After discarding Davis' body in a wooded area, Petitioner and Temples returned to the Motel to remove blood stains and shell casings from the scene of the homicide. Id. After attempting to destroy evidence of the homicide, Petitioner and Temples drove to a house in Albrightsville, Pennsylvania. Id. at *6. While at this house, Petitioner and Temples planned their flight from Pennsylvania and cleaned the interior of Davis' car to remove any evidence of the homicide. Id.

Petitioner and Temples then attempted to flee to Mexico. Id. During this flight, Petitioner and Temples discarded Davis' automobile, traveled by bus to Brownsville, Texas, and attempted to sell Davis' belongings, including the distinctive pendant, at a pawnshop. Id. at *7. While attempting to cross the Mexican border, Petitioner was detained due to an outstanding warrant on an unrelated charge. Id.

Temples later provided a written statement detailing the course of these events, and after negotiating a deal for leniency (the "Cooperation Agreement"), testified against Petitioner during trial. (Rep. & Rec. 2.) On August 23, 2001, after the conclusion of the penalty phase of Petitioner's trial, he was sentenced to life imprisonment for the murder conviction. (Id. at 2-3.)[1]

B. Procedural Background

Petitioner brought a direct appeal of his conviction and sentence, and the Pennsylvania Superior Court affirmed the judgment of sentence on December 17, 2003. (Id. at 4.) On May 19, 2004, the Pennsylvania Supreme Court denied Petitioner's allowance of appeal. (Id.)

Petitioner then filed a petition pursuant to Pennsylvania's Post Conviction Relief Act 42 Pa. C.S. §§ 9541 et seq. ("PCRA") on December 21, 2004, which was denied after an evidentiary hearing by an opinion of the Court of Common Pleas (the "PCRA Court"). (Id.) Petitioner appealed the denial of his PCRA petition on nine grounds involving ineffective assistance of counsel and one ground of violation of due process. (Id.) On

---

[1]      The trial court also sentenced Petitioner to ten to twenty (10-20) years imprisonment for the robbery conviction; twelve to twenty-four (12-24) months imprisonment for the unauthorized use of the automobile; and one to two (1-2) years imprisonment for tampering with physical evidence. (Id. at 3.) The conviction for theft by unlawful taking merged with the conviction for robbery for purposes of sentencing. (Id.)

July 24, 2007, the Pennsylvania Superior Court (the "Superior Court") affirmed the denial of relief on seven of Petitioner's claims as meritless, and found that Petitioner waived his three remaining claims concerning ineffective assistance of counsel based upon his non-compliance with the Pennsylvania Rules of Appellate Procedure. (Id.) On December 24, 2007, the Pennsylvania Supreme Court denied Petitioner's request for allowance of an appeal. (Id. at 5.)

On May 9, 2008, Petitioner submitted his original Petition in an improper form, and on May 12, 2008, this Court dismissed this original Petition without prejudice. (Id.) On June 3, 2008, Petitioner re-filed his Petition and this civil action was reopened on June 27, 2008. (Id.) Petitioner asserted the following claims in his Petition:[2] (1) violation of due process under Brady v. Maryland due to the failure to disclose the Commonwealth's deals with Temples and the "failure to correct false testimony;" (the "Brady Claim") (2) due process violations for failure to instruct on: (a) self-defense, (b) "no adverse inference," (c) a limiting instruction for evidence of the uncharged robbery, and (d) the proper standard for voluntary

---

[2]     Petitioner's claims were not pleaded artfully and the claims set forth in this Memorandum were gleaned from Petitioner's filings in accordance with the liberal standard applied to pro se filings in habeas proceedings. See Hunterson v. DiSabato, 308 F.3d 236, 243 (3d Cir. 2002) ("Of course, as this is a pro se petition, we will construe it liberally.") (citing United States v. Garth, 188 F.3d 99, 108 (3d Cir. 1999)).

intoxication (collectively, the "Due Process Claims"); (3) corresponding claims for ineffective assistance of counsel due to failure to object to the lack of instruction for: (a) self-defense (the "Self-defense Instruction Claim"), (b) "no adverse inference" (the "No Adverse Inference Instruction Claim"), (c) a limiting instruction for evidence of the uncharged robbery (the "Limiting Instruction Claim"), and (d) a proper instruction on voluntary intoxication (the "Voluntary Intoxication Instruction Claim"); and (4) an ineffective assistance of counsel claim for failure to use expert testimony to support a voluntary intoxication defense (the "Expert Testimony Claim").

## II.  APPLICABLE LAW

### A.  Standard of Review

Federal courts are vested with jurisdiction over petitions for writs of habeas corpus for a prisoner "in custody pursuant to the judgment of a State court" in violation of the United States Constitution.  28 U.S.C. § 2254(a).  A district court is to apply de novo review to those portions of a magistrate judge's report and recommendation to which objections are made.  See 28 U.S.C. § 636(b)(1)(C).  Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") a claim that is adjudicated on the merits in state court is to be afforded deference by a reviewing federal court.  See 28 U.S.C. §

2254(d).[3]

      B.    Doctrine of Exhaustion and Procedural Default

          Section 2254(b)(1)(A) requires that a habeas petitioner "exhaust" available state remedies before proceeding to file a habeas petition in federal court. Id. § 2254(b)(1). Pursuant to this doctrine of exhaustion, "a federal habeas court may not grant a petition for a writ of habeas corpus filed by a person incarcerated from a judgment of a state court unless the petitioner has first exhausted the remedies available in the state courts. Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing Toulson v. Beyer, 987 F.2d 984 (3d Cir. 1993)). Thus, absent exhaustion of state remedies, a federal court is precluded from considering the merits of a habeas petition. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). A state

---

     [3]     28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id.

prisoner is required to provide the state courts a full opportunity to resolve any constitutional defects by participating in one complete round of the available state appellate review process. Id. at 845; see also Woodford v. Ngo, 548 U.S. 81, 92 (2006). In order to "exhaust" a claim, a petitioner must demonstrate that it was "fairly presented" to the state courts, meaning that the petitioner has raised "the same factual and legal basis for the claim to the state courts." Nara v. Frank, 468 F.3d 187, 197-98 (3d Cir. 2007) (citing Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam )). The petitioner retains the burden to prove all facts necessary to show that he has exhausted the available state remedies. Lambert, 134 F.3d at 513 (citing Toulson, 987 F.2d at 987). The Court retains discretion to deny a habeas petition on the merits even if it is "mixed," i.e., it contains both exhausted and unexhausted claims. 28 U.S.C. § 2254(b)(2).

The exhaustion requirement is inapplicable where a state's procedural rules bar a petitioner from seeking relief. See Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002); Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996). Absent some extraordinary circumstances, a claim that is subject to this procedural default typically may not be considered by federal courts. See Coleman v. Thompson, 501 U.S. 722, 750 (1991) (stating that a federal court is precluded from reviewing a

procedurally barred claim "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice").

     C.   Legal Standard Under 28 U.S.C. § 2254

     Pursuant to 28 U.S.C. § 2254, as amended by the AEDPA, the determinations of state courts are entitled to considerable deference from federal courts. Duncan v. Morton, 256 F.3d 189, 196 (3d. Cir. 2001). Section 2254(d) precludes federal habeas relief as to:

> any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court interpreted these two prongs in Williams v. Taylor, and stated the following:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412-13 (2000). In order to determine whether a state court's application of federal law is "unreasonable," a court must apply an objective standard, such that the relevant application "may be incorrect but still not unreasonable." Duncan, 256 F.3d at 196 (citing Williams, 529 U.S. at 409-10). The test is whether the state court decision "resulted in an outcome that cannot reasonably be justified [under existing Supreme Court precedent]." Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999) (en banc). A petitioner is required to do more than simply show that his proposed interpretation of the relevant precedent is "more plausible;" rather it is necessary to demonstrate that the precedent "requires a contrary outcome." Id. In other words, habeas relief is inappropriate "solely on the basis of simple disagreement with a reasonable state court interpretation of the applicable precedent." Id.

        With regard to the factual findings of a state court, courts are instructed to apply a presumption of correctness which can only be overcome by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1);[4] Duncan, 256 F.3d at 196. This presumption

---

The text of section 2254(e)(1) provides:

        In a proceeding instituted by an application for a
        writ of habeas corpus by a person in custody pursuant
        to the judgment of a State court, a determination of a
        factual issue made by a State court shall be presumed
        to be correct. The applicant shall have the burden of

applies equally to factual determinations rendered by state trial and appellate courts. Duncan, 256 F.3d at 196. This presumption of correctness has been extended to implicit factual findings of state courts as well. See Campbell v. Vaughn, 209 F.3d 280, 285-86 (3d Cir. 2000) (noting that the Supreme Court interpreted this statute and "held that an implicit finding of fact is tantamount to an express one, such that deference is due to either determination") (citing Parke v. Raley, 506 U.S. 20, 35 (1992)).

## III. MAGISTRATE JUDGE RESTREPO'S REPORT AND RECOMMENDATION

Magistrate Judge Restrepo recommends that Petitioner's motion for summary judgment be denied, that the Petition be dismissed, and that a certificate of appealability should not issue. Upon review of the record, Magistrate Judge Restrepo reached the following conclusions: (1) the Due Process Claims, Self-defense Instruction Claim, and Limiting Instruction Claim are all unexhausted; (2) the Brady Claim is without merit; (3) the Voluntary Intoxication Instruction Claim is without merit; (4) the Expert Testimony Claim is without merit; and (5) the No Adverse Inference Instruction Claim is without merit. Each of these findings is addressed seriatim.

---

rebutting the presumption of correctness by clear and convincing evidence.

Id.

A.  Failure to Exhaust and Procedural Default

Magistrate Judge Restrepo concluded that several of Petitioner's claims are unexhausted and unavailable for review. In order to properly analyze the question of exhaustion, it is necessary to qualify which claims were brought previously in Petitioner's state court proceedings and which claims are asserted in this federal habeas proceeding. Petitioner filed an amended PCRA petition on July 5, 2005, which was adjudicated by the PCRA Court on August 2, 2006. Petitioner appealed the decision of the PCRA Court to the Superior Court and presented the following issues on appeal (the corresponding federal claims are placed in brackets):

(1) Whether the Commonwealth's nondisclosure of the entire deal offered to its indispensable witness constituted a violation of defendant's due process rights? [the **Brady** Claim]
(2) Whether appellate counsel was ineffective for failing to raise on direct appeal trial counsel's ineffectiveness for failing to object to the court's jury instructions on voluntary intoxication? [**the Voluntary Intoxication Instruction Claim**]
(3) Whether appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for not objecting to the trial court's omission of a "no adverse inference" instruction? [**the No Adverse Inference Instruction Claim**]
(4) Whether appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for not utilizing available expert evidence to support "diminished capacity" and other defenses? [**the Expert Testimony Claim**]
(5) Whether appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for abandoning his motion in limine seeking to preclude reference to defendant's open warrants and/or for not objecting to references to said warrants?

(6) Whether appellate counsel was ineffective for failing to raise: (a) the trial court's erroneous admission of evidence of defendant's abandoned robbery plan; (b) the trial court's failure to provide the jury with a cautionary instruction; and/or (c) trial counsel's ineffectiveness for not requesting a cautionary instruction? [**the Limiting Instruction Claim**]

(7) Whether appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for not adequately cross-examining the Commonwealth's indispensable witness with inconsistencies affecting her credibility?

(8) Whether appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for not objecting to the Commonwealth's improper bolstering of its key fact witnesses?

(9) Whether appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to present evidence of a "confrontation in the room" as promised to the jury? [**the Self-defense Instruction Claim**]

(10) Whether appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to present evidence of defendant's character for nonviolence?

Commw. v. Young, No. 2070 EDA 2006, Mem. Op. at *4-5 (Pa. Super. Ct. July 24, 2007) ("Young II").

At the outset, the Superior Court noted that Petitioner's brief failed to conform with the procedural requirements of Rules 2116 and 2135 of the Pennsylvania Rules of Appellate Procedure. Id. at *6. Rule 2116, which was amended subsequent to the Superior Court's decision in Young II, provided that a statement of questions on appeal "must never exceed one page."[5] Rule 2135 provides that an appellant brief shall not

---

[5] The full text of the then-applicable version of Rule 2116 provides:

13

exceed 70 pages.[6] The Superior Court found that Petitioner's

submissions violated both the one-page limitation of Rule 2116

and the 70-page limitation of Rule 2135. <u>Young II</u>, No. 2070 EDA

2006, Mem. Op. at *6-7. Therefore, the Superior Court concluded

---

(a) General rule. The statement of the questions
involved must state the question or questions in the
briefest and most general terms, without names, dates,
amounts or particulars of any kind. It should not
ordinarily exceed 15 lines, must never exceed one page,
and must always be on a separate page, without any
other matter appearing thereon. This rule is to be
considered in the highest degree mandatory, admitting
of no exception; ordinarily no point will be considered
which is not set forth in the statement of questions
involved or suggested thereby. Whenever possible each
question must be followed immediately by an answer
stating simply whether it was affirmed, negatived,
qualified or not answered by the court or government
unit below. If a qualified answer was given to the
question, appellant shall indicate, most briefly, the
nature of the qualification, or if the question was not
answered and the record shows the reason for such
failure, the reason shall be stated briefly in each
instance without quoting the court or government unit
below.

Pa. R.A.P. 2135(a).


   [6]    The full text of Rule 2135(a) provides:

(a) General rule. Unless otherwise provided by an
appellate court:

        (1) a principal brief shall not exceed 70 pages of
        production when produced on a word
        processor/computer or typewriter.

        (2) a reply brief shall not exceed 25 pages of
        production when produced on a word
        processor/computer or typewriter.

<u>Id.</u> 2135(a).

that, in spite of its liberal interpretation of the applicable
Rules of Appellate Procedure, Petitioner's violations prevented
it from addressing claims 8, 9 and 10.  Id. at *7.  The Superior
Court then addressed only the first seven claims submitted since
only those claims were submitted in conformity with the Rules of
Appellate Procedure.  Id.

Based upon the Superior Court's decision to review only
Petitioner's first seven claims, Magistrate Judge Restrepo found
that the remaining three non-reviewed claims were not exhausted.
(Rep. & Rec. 8.)  He then went on to find that those unexhausted
claims were subject to procedural default, thereby making them
unavailable for review.  (Id.); see 42 Pa. C.S. § 9545(b)(1)
(requiring that any PCRA petition must be filed within one year
of the date the judgment becomes final).

Based upon the decision of the Superior Court in Young
II, only the following claims that were also raised in
Petitioner's instant claim were addressed: (1) the Brady Claim;
(2) the Voluntary Intoxication Instruction Claim; (3) the No
Adverse Inference Instruction Claim; (4) the Expert Testimony
Claim; and (5) the Limiting Instruction Claim.  Conversely, the
remaining claims raised in the instant federal Petition were not
addressed by the Superior Court: (1) the Due Process Claims; and
(2) the Self-defense Instruction Claim.

15

Magistrate Judge Restrepo correctly concluded that those claims which were not reviewed by the Superior Court are not exhausted, have been procedurally defaulted, and therefore are unavailable for review by this Court. See Kirnon v. Klopotoski, 620 F. Supp. 2d 674, 683-84 (E.D. Pa. 2008) (Yohn, J.) (finding that the Pennsylvania superior court's refusal to address the merits of claims because of failure to comply with the page limit under Rule 2116 rendered the claims unexhausted and subject to procedural default); Williams v. Folino, Civ. A. No. 07-1099, 2008 WL 336306, at *5 (E.D. Pa. Feb. 4, 2008) (Knoll Gardner, J.) (noting that failure to comply with Rule 2116 constitutes default for purposes of habeas review). Magistrate Judge Restrepo apparently found that the Limiting Instruction Claim was unexhausted, despite the fact that it was addressed by the Superior Court in Young II. Since this claim was fairly presented for one full round of review to the Pennsylvania courts, it was error for Magistrate Judge Restrepo to find this claim was unexhausted.[7]

Petitioner objects to the conclusion that his claims are unexhausted on the basis that he presented all of the claims in his federal Petition on direct appeal, and therefore, it was

---

[7]    For purposes of exhaustion, a petitioner is only required to present his petition to the Pennsylvania superior court, rather than seek review by the Pennsylvania Supreme Court. See Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004).

unnecessary to present these claims to the state courts in the
PCRA process. (Petr.'s Objs. to Rep & Rec. 7.) Petitioner's
argument is inapposite.

As explained above, in order for a claim to be deemed
exhausted, it must be "fairly presented" to the state courts,
meaning that the same factual and legal basis was reviewed by the
state court judge. See Nara, 468 F.3d at 197-98 (internal
citation omitted). Petitioner is correct that a claim will be
deemed exhausted if it is brought either in post-conviction
proceedings or direct appeal. See Castille v. Peoples, 489 U.S.
346, 349-50 (1989); Williams, 2008 WL 336306, at *3 (stating that
"a habeas petitioner successfully exhausts a claim by bringing it
to the Superior Court either on direct appeal or during PCRA
proceedings"). An examination of Petitioner's direct appeal
reveals that Petitioner presented only the following four issues:

> (1) Did the trial court err by instructing the jury
> that first degree murder can be reduced to third degree
> murder if a defendant loses "his ability to be
> conscious and his ability to be conscious of it"?
> (2) Did the trial court fail to cure its mistaken
> instruction when re-instructing the jury during jury
> deliberations when the instruction addressed only the
> general definition of the defense and not the specific
> criteria for intoxication as stated in the court's
> charge?
> (3) Was trial court's [sic] error substantial and not
> harmless, because there was not "overwhelming" evidence
> of a specific intent to kill?
> (4) Was [Appellant]'s robbery conviction unsupported by
> the evidence or against the weight of the evidence
> because there was no evidence establishing that
> [Appellant] used force during a theft, or that use of
> force any time after a theft was for the purpose of

committing a theft?

Commw. v. Young, No. 315 EDA 2002, at *6-7 (Pa. Super. Ct. Dec. 17, 2003) ("Young III"). Petitioner did not raise a claim with respect to the Self-defense Instruction Claim and raised none of the Due Process Claims, except for a claim limited to the trial court's alleged erroneous instruction on voluntary intoxication. The Superior Court in Young III specifically refused to consider the merits of this due process claim on the ground that Petitioner waived this claim by not objecting to the voluntary intoxication instruction at the time of trial. Id. at *7-8. Therefore, as Petitioner has not fairly presented this claim to the state court, it is also unavailable for federal review based upon the doctrines of exhaustion and procedural default.[8]

_____

[8]     Similarly, any argument by Petitioner that he has exhausted the corresponding Due Process Claims on the basis that he presented the companion ineffective assistance of counsel claims to the state courts is baseless. The fact that similar claims were presented for review in the state court is not sufficient to render these claims exhausted. See Gattis v. Snyder, 278 F.3d 222, 238 n.6 (3d Cir. 2002) (rejecting the notion that a claim for ineffective assistance of trial counsel was sufficient presentation of a separate legal claim as it "involves a completely different legal theory"); Dooley v. Petsock, 816 F.2d 885, 889 n.3 (3d Cir. 1987) (observing that where a petitioner raises only an ineffective assistance of counsel claim in state court, any due process claim brought in a federal petition would be considered unexhausted); Keeling v. Shannon, Civ. A. No. 06-4626, 2003 WL 22158814, at *9 (E.D. Pa. Aug. 20, 2003) (Green, J., adopting Report of Rueter, M.J.) (noting that the presentation of an ineffective assistance of counsel claim "is not the same as [presenting] the underlying substantive claim"); see also Senk v. Zimmerman, 886 F.2d 611, 614 (3d Cir. 1989) (finding that the claim that counsel failed to challenge a jury instruction concerns his attorney's performance

Based upon the foregoing, the Court will adopt Magistrate Judge Restrepo's findings on the exhaustion issue except as to the Limiting Instruction Claim. Each of Magistrate Judge Restrepo's conclusions with respect to the unexhausted claims are addressed in turn. As Magistrate Judge Restrepo did not address the Limiting Instruction Claim, this claim is analyzed independently in this Memorandum.

B.   Brady Claim

Magistrate Judge Restrepo addressed Petitioner's claim that the failure of the Commonwealth to fully disclose the details of the Cooperation Agreement with Temples constituted a Brady violation. Under Brady v. Maryland, the prosecution must produce evidence that is material to either guilt or punishment, irrespective of good or bad faith. 373 U.S. 83, 87 (1963). This rule of disclosure has been extended by the Supreme Court to include impeachment evidence as well as exculpatory evidence. See United States v. Bagley, 473 U.S. 667, 676 (1985) (extending Brady to impeachment evidence); Giglio v. United States, 405 U.S. 150, 154 (1972). In order to determine whether a Brady violation has occurred, courts are instructed to determine whether: (1) the evidence at issue is favorable to the defendant, either because it is exculpatory or impeaching in nature; (2) the evidence was willfully or inadvertently suppressed; and (3) prejudice has

_____

and only indirectly implicates the underlying claim).

19

resulted from this suppression. See Banks v. Dretke, 540 U.S. 668, 691 (2004) (citing Strickler v. Green, 527 U.S. 263, 281-82 (1999)); Lewis v. Horn, 581 F.3d 92, 108 (3d Cir. 2009). All three parts of this inquiry must be satisfied in order to find that a Brady violation exists.

In order for evidence to be deemed "material," a reasonable probability must exist that "had the evidence been disclosed to the defense, the result of the proceeding would have been different[.]'" Youngblood v. West Virginia, 547 U.S. 867, 870 (2006) (quoting Strickler, 527 U.S. at 280). However, a "showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal[.]" Id. (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). It is only necessary for a petitioner to demonstrate that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Youngblood, 547 U.S. at 570 (quoting Kyles, 514 U.S. at 435).

Magistrate Judge Restrepo noted that both the PCRA Court and the Superior Court held that the jury was fully apprised of the terms of the Cooperation Agreement. (Rep. & Rec. 15, 18.) Magistrate Judge Restrepo recognized that these findings are considered factual conclusions of the state courts, which are entitled to a presumption of correctness absent

Petitioner's production of clear and convincing evidence to the
contrary.  See 28 U.S.C. § 2254(e)(1).  Petitioner has presented
no clear and convincing evidence to cast doubt upon the
conclusions of the state courts.

Magistrate Judge Restrepo recounted the following
testimony heard by the jury, demonstrating that no deal was
suppressed by the Commonwealth.

| | |
|---|---|
| [Petitioner's trial attorney]: | Now, you agreed to cooperate with the Commonwealth in the [Davis] matter when you gave your statement on September 14th, 2000, correct. |
| Temples: | Yes. |
| [Petitioner's trial attorney]: | You were given a deal by the Commonwealth in exchange for your cooperation for that statement and for testifying here today in court, weren't you? |
| Temples: | Yes. |
| [Petitioner's trial attorney]: | Now, and that deal is what? |
| Temples: | I just have to tell the truth, and I won't get any further charges against me. |
| [Petitioner's trial attorney]: | Okay. And that's all. |
| Temples: | No further jail time. |
| [Petitioner's trial attorney]: | Now, before you agreed to cooperate with the Commonwealth, you were being held on $300,000 bail, weren't you? |
| Temples: | Yes. |
| [Petitioner's trial attorney]: | Then only four days later on September 18th, 2000 after you agreed to cooperate, you were given |

|  |  |
|---|---|
|  | unsecured bail in your case, correct? |
| Temples: | Yes. |
| [Petitioner's trial attorney]: | And just so we're clear, unsecured bail means that you didn't have to post a dime of that $300,000 to get out of jail, did you? |
| Temples: | No. |
| [Petitioner's trial attorney]: | Now, one of the conditions of your release on that bail was that you remain arrest free, wasn't it? |
| Temples: | I don't know. |
| [Petitioner's trial attorney]: | No. Okay. But it is true that you were arrested again since your release on unsecured bail, correct? |
| Temples: | Yes. |
| [Petitioner's trial attorney]: | And despite that arrest, your bail wasn't revoked, was it? |
| Temples: | No. |
| [Petitioner's trial attorney]: | And you remained out of jail that entire time - - |
| Temples: | Yes. |
| [Petitioner's trial attorney]: | - - correct? Now on June 20th, just last week, right here in this courtroom you pled guilty to receiving stolen property and tampering with evidence in the Kehan Davis matter, correct? |
| Temples: | Yes. |
| [Petitioner's trial attorney]: | You're being prosecuted by the DA of Lehigh County, correct? |
| Temples: | Yes. |
| [Petitioner's trial attorney]: | Was that the same DA that's handling this case? |
| Temples: | Yes. |
| [Petitioner's trial attorney]: | Did you go to jail when you pled guilty? |

22

|                              |                                                                 |
|------------------------------|-----------------------------------------------------------------|
| Temples:                     | No.                                                             |
| [Petitioner's trial attorney]: | And when is your sentencing in that case?                     |
| Temples:                     | It's not until September 5th.                                   |
| [Petitioner's trial attorney]: | And that's after you testified here in this matter, correct?  |
| Temples:                     | Yes.                                                            |
| [Petitioner's trial attorney]: | Okay.  So you have a lot riding on your testimony here today, don't you? |
| Temples:                     | I don't - - I mean I don't understand your question.            |
| [Petitioner's trial attorney]: | Well, you testified that part of your deal was you had to come in here and testify for the Commonwealth, is that correct? |
| Temples:                     | Yes.                                                            |
| [Petitioner's trial attorney]: | And if you didn't do that, then your deal may fall through, correct? |
| Temples:                     | I guess, I suppose so.                                          |
| [Petitioner's trial attorney]: | I'd call that a lot riding on your testimony, wouldn't you?    |
| [Prosecutor]:                | Objection.                                                      |
| [The Court]:                 | The objection is overruled, you may answer the question.       |
| Temples:                     | Yes.                                                            |

(Rep. & Rec. 15-17.)

Furthermore, Magistrate Judge Restrepo recounted the following trial testimony regarding Temples not being charged in exchange for her testifying at Petitioner's trial.

|                              |                                                                 |
|------------------------------|-----------------------------------------------------------------|
| [Petitioner's trial attorney]: | Now, so we're clear, you were not charged with homicide in this case, were you? |

|                                  |                                                                                                            |
|----------------------------------|------------------------------------------------------------------------------------------------------------|
| Temples:                         | No.                                                                                                        |
| [Petitioner's trial attorney]:   | In fact, you were not charged as an accomplice of homicide, were you?                                      |
| Temples:                         | No.                                                                                                        |
| [Petitioner's trial attorney]:   | You weren't even charged with conspiracy at all, were you?                                                 |
| Temples:                         | No.                                                                                                        |
| [Petitioner's trial attorney]:   | The only crimes that you were charged with for your participation in this incident was receiving stolen property and the tampering with evidence, correct? |
| Temples:                         | Yes.                                                                                                       |

(Id. at 17-18.)

The PCRA Court applied the Brady standard to determine whether the alleged suppression of the terms of the Cooperation Agreement violated Petitioner's due process rights. The PCRA Court found that based upon the foregoing testimony, a substantial factual basis existed to find that the material terms of the Cooperation Agreement were disclosed to the jury, thus no Brady violation occurred. Young I, Mem. Op. at *16. On appeal, the Superior Court applied the standard set forth in Commonwealth v. Lambert, 884 A.2d 848, 854 (Pa. 2005), in which the Pennsylvania Supreme Court incorporated the framework established by Brady and its progeny. Young II, 2070 EDA 2006, Mem. Op. at *7-8. The Superior Court agreed with the PCRA Court's assessment that the terms of the Cooperation Agreement were disclosed to an extent that Petitioner could not establish the prejudice necessary for a constitutional violation under Brady. Id.

24

Magistrate Judge Restrepo concluded that Petitioner failed to present clear and convincing evidence to undermine the factual finding of the Pennsylvania courts that the jury was fully apprised of the terms of the Cooperation Agreement. (Rep & Rec. 18-19.) Magistrate Judge Restrepo further found that under the deferential standard set forth in 28 U.S.C. § 2254(d), the conclusions of the Pennsylvania courts were not "contrary to" federal law and did not constitute an "unreasonable application" of federal law. (Id. at 19.)

Petitioner objects to Magistrate Judge Restrepo's conclusion and argues that the jury heard "uncorrected perjury" concerning the Cooperation Agreement, which he argues amounts to a Brady violation. Petitioner relies upon the following statements in support of his argument that the Government suborned perjury:

(1) Temples lied to the jury when she stated that she did not talk to Pennsylvania detectives in August 2000 in connection with Davis' murder;

(2) Temples testified that Petitioner stopped the car and shot Davis, but Temples was never in the car with Davis' body;

(3) the Commonwealth presented testimony that Temples received her leniency deal on September 14, 2000, but she actually received her deal on September 3, 2000, and that this deal had nothing to do with "no further jail time";

(4) Temples did not inform the jury that a component of the Cooperation Agreement was having charges against her dropped in Texas;

(5) an explicit term of the Cooperation Agreement involved Temples receiving probation for the murder and robbery charges. Petitioner contends that based upon these false statements, the Commonwealth knowingly elicited perjured testimony, thereby establishing a Brady violation.

Petitioner's argument is unavailing on two grounds. First, Petitioner cites to minor factual inconsistencies, several of which are not supported with citations to the record, that fall short of showing that the Commonwealth presented perjured testimony. See Lambert v. Blackwell, 387 F.3d 210, 249 (3d Cir. 2004) (finding that "[d]iscrepancy is not enough to prove perjury" such that in order for a habeas petitioner to establish a constitutional violation it must be shown that a witness actually perjured himself and that the government knew or should have known about the perjury); see, e.g., United States v. Caballero, 277 F.3d 1235, 1244 (10th Cir. 2002) (finding that "even postulating tension between [a witness's] responses on direct and cross, such inconsistency alone does not establish the knowing use of perjured testimony," such that no constitutional error existed because of "the absolute lack of evidence to show either the falsity of [the witness's] testimony or the

prosecutor's knowledge of false testimony"). These alleged false statements are addressed in turn.

One, Petitioner's allegation that Temples lied about speaking with Pennsylvania detectives is not supported by the record. Temples testified that she spoke with Pennsylvania law enforcement officers upon her return from Texas and after being questioned independently by Texas law enforcement officers. (Trial Tr. vol. 6, 1588-90, June 25, 2001.) Petitioner cites to a Homicide Investigation Action Report generated by Officer David Seip ("Seip") of the Pennsylvania State Police in support of his argument. (Petr.'s Objs. to Rep. & Rec., Ex. A.) This report corroborates, rather than contradicts, Temples' testimony on this point. This report expressly recounts that Seip and another Pennsylvania detective traveled to Texas to investigate Temples' connection to Davis' homicide. (Id.) The report, however, makes no reference to Temples being questioned by Pennsylvania law enforcement officers during her detention in Texas. (Id.)

Two, Petitioner's allegation that Temples perjured herself when she stated that she traveled with Petitioner during his disposal of Davis' body is belied by the record. Temples testified unequivocally at trial that she was present with Petitioner in the car during the time in which he disposed of Davis' body. (Trial Tr. vol. 6, 1535-40, June 25, 2001.) Petitioner attempts to contradict this statement by relying upon

27

an October 8, 2000 police report which recounts statements from
an inmate at the Cameron County Jail,[9] Heather Cantu, who told
police that Temples relayed to her the story of Davis' homicide,
but that Temples stated to Cantu that she was not in the car with
Petitioner at the time that he discarded Davis' body. (Petr.'s
Objs. to Rep. & Rec., Ex. B.)  The fact that there is a potential
inconsistency between these sources of information does not
dictate that Temples perjured herself at trial.  See Lambert, 387
F.3d at 249 (noting that a factual discrepancy by itself does not
rise to the level of perjury).

Three, Petitioner's allegation of perjury based upon
the inconsistency between the September 14, 2000 date and the
September 3, 2000 date with respect to the Cooperation Agreement
is patently without merit.  The testimony of Seip cited by
Petitioner reveals that he interviewed Temples on September 14,
2000 (Trial Tr. vol. 6, 1633, June 25, 2001.)  Seip further
testified, however, that he had internal discussions with the
Lehigh County District Attorney's Office in "early September"
regarding a potential cooperation agreement with Temples.  (Id.
at 1638.)  This sequence is supported by Petitioner's own
exhibit, which is the internal notes of Commonwealth Prosecutor
Waldron dated September 9, 2000, memorializing a contemplated

---

[9]     Cameron County Jail is located in Brownsville, Texas.
Temples was incarcerated there during her detention in Texas.

offer of cooperation with Temples. (Petr.'s Objs. to Rep. & Rec., Ex. D.) Importantly, Seip did not testify that the Cooperation Agreement itself was struck with Temples on September 3, 2000. Therefore, Petitioner fails in his attempt to create an inconsistency in Temples' testimony on this point.

The fourth and fifth alleged perjured statements relied upon by Petitioner constitute, at best, questionable characterizations of the testimony presented concerning the Cooperation Agreement. These statements arguably are reconcilable with Temples' proffered testimony, however, even if some inconsistency exists, Petitioner cannot meet his burden of showing the knowing presentation of perjury by the Commonwealth necessary to establish a constitutional violation.

A second, and independent, ground exists to deny Petitioner's claim with respect to the alleged perjured testimony concerning the Cooperation Agreement. Because Petitioner's claim was adjudicated on the merits in the course of his PCRA proceedings, § 2254(d) instructs that this Court must review it under a deferential standard. Assuming arguendo that Petitioner's factual allegations are correct, and this information was deemed suppressed for purposes of Brady, Petitioner cannot demonstrate that the Pennsylvania courts erred in finding that this information was not material under the Brady analysis. See Lewis, 581 F.3d at 109 (finding that a habeas

petitioner failed to present clear and convincing evidence to demonstrate that state court's application of <u>Brady</u> standard was inconsistent with federal law). As demonstrated by the lengthy excerpts from the trial cited above, Petitioner's counsel explored the terms and scope of the Cooperation Agreement in considerable detail. Specifically, the jury was apprised that Temples received leniency with respect to the charges that were pending against her in exchange for her testimony. There was ample testimony provided to demonstrate Temples' potential bias in light of the Cooperation Agreement. Even if the additional details alleged by Petitioner were disclosed, there is no reasonable probability that the outcome of the trial would have been different since the material terms of the Cooperation Agreement necessary to impeach Temples were presented to the jury during Temples' cross-examination.

Based upon the collective evidence submitted at trial, Petitioner has failed to present clear and convincing evidence to overturn the state courts' conclusions with respect to the alleged <u>Brady</u> violation. As these conclusions were not "contrary to" or an "unreasonable application" of federal law, Magistrate Judge Restrepo's recommendation that the state courts' conclusions should be accepted by this Court will be adopted.

C.    <u>Ineffective Assistance of Counsel Claims</u>

The bulk of Petitioner's claims concern ineffective

assistance of counsel. Magistrate Judge Restrepo concluded that those ineffective assistance of counsel claims which were exhausted were without merit.

The well-established test for establishing an ineffective assistance of counsel claim was enunciated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Under this Strickland standard, a habeas petitioner seeking relief on the basis of ineffective assistance is required to "show that his counsel's representation of him fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense." Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008) (citing Strickland, 466 U.S. at 688). A petitioner must meet both the deficient performance prong and prejudice prong of this Strickland analysis in order to establish an ineffective assistance of counsel claim. Wong v. Belmontes, 130 S. Ct. 383, 384 (2009); Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) ("[T]o establish ineffective representation, the defendant must prove both incompetence and prejudice.").

With respect to deficient performance, a petitioner must establish that his representation "fell below an objective standard of reasonableness." Wong, 130 S. Ct. at 384 (citing Strickland, 466 U.S. at 688). "In light of 'the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal

defendant,' the performance inquiry necessarily turns on 'whether counsel's assistance was reasonable considering all the circumstances.'" Id. (quoting Strickland, 466 U.S. at 688-689). Courts are instructed to be "highly deferential" in scrutinizing the performance of counsel. Id. at 484-85 (citing Strickland, 466 U.S. at 689).

In order to establish prejudice, a petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability has been defined as "sufficient to undermine confidence in the outcome" of the proceeding. Id. Relief under Strickland is not available where counsel fails to raise a meritless claim. See id. at 691.

While Strickland instituted a two-pronged approach to the ineffective assistance of counsel inquiry, the Supreme Court further explained that analysis of each prong is unnecessary if a petitioner clearly cannot establish one of the elements. Id. at 694. Therefore, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id.

The Pennsylvania Supreme Court has developed an ineffective assistance standard that requires a petitioner to demonstrate that: (1) the underlying claim is of arguable merit,

(2) counsel had no reasonable basis for the act or omission in question, and (3) but for counsel's act or omission, the outcome of the proceedings would have been different. See Commw. v. Douglas, 645 A.2d 226, 230-31 (Pa. 1994); Commw. v. Pierce, 527 A.2d 973, 975 (Pa. 1987). The standard applied under this Douglas/Pierce framework has been found to be materially identical to the Strickland standard. See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000). Based upon the analogous analytical framework, the Third Circuit has pronounced that the Pennsylvania standard is "not contrary" to Strickland. See Jacobs v. Horn, 395 F.3d 92, 106 n.9 (3d Cir. 2005) (citing Werts, 228 F.3d at 204). Therefore, in order for Petitioner to prevail on his ineffective assistance claims, he must demonstrate that the state courts' decisions were "contrary to" or an "unreasonable application" of the standard set forth in Strickland.

     1.   Voluntary Intoxication Instruction Claim

     Magistrate Judge Restrepo addressed Petitioner's alleged ineffective assistance claim based upon trial counsel's failure to object to an allegedly erroneous instruction on voluntary intoxication. Petitioner specifically alleged that the trial court erred in defining the "term losing control of [one's] faculties" to mean "his ability to be conscious and his ability to be conscious of it." (See Hab. Pet ¶ 12.)

Magistrate Judge Restrepo noted that the Superior Court affirmed the PCRA's Court's denial of this claim because "[a]fter reviewing the trial court's jury instruction as a whole, we conclude that [the trial court] clearly, adequately and accurately set [] forth the applicable [Pennsylvania] law" and that the trial court "did not misstate the law." Young II, 2070 EDA 2006, Mem. Op. at *11. The PCRA Court observed that the jury was instructed that the defense of intoxication was available as to a first degree murder charge, and the trial judge provided the following instruction:

> The defendant is permitted to claim as a defense that he was so intoxicated or drugged at the time of the killing that he did not possess the specific intent to kill required for first degree murder. The Commonwealth has the burden of disproving this defense.
> Thus, you cannot find the defendant guilty of first degree murder, unless you are satisfied beyond a reasonable doubt that the defendant, despite any intoxicated condition, was at the time capable of forming a specific intent to kill. That is a willful, deliberate and premeditated decision to kill.

Young I, Mem. Op. at *22. The trial court judge then provided the following definition with respect to voluntary intoxication:

> Now, let me give you a little bit more definition because I said yesterday that I expressed impatience with the phrase control of faculties, but, in fact, that is what the law states, and I think it's not a particularly useful definition, so I'm going to define it for you one more time.
> A defendant claiming use of such a defense, that is voluntary intoxication or drugged state, must be so overwhelmed or overpowered to the point of losing control of his faculties, that is to lose control over his ability to make a willful, deliberate and premeditated decision, or his ability to be conscious

and his ability to be conscious of it.

Id. at *23 (emphasis added). The PRCA Court addressed
Petitioner's contention that this instruction was erroneous
because the defense of voluntary intoxication does not require
that a jury conclude that a defendant lost his ability to be
conscious. The PCRA Court first noted that the instruction was
clearly phrased in the disjunctive by the use of the term "or."
Id. The PCRA Court then set forth Pennsylvania's standard jury
instruction for voluntary intoxication for comparison, which
provides:

> The defendant is permitted to claim as a defense that
> he or she was so overpowered by [intoxicants] [drugs]
> that the defendant had lost control of his or her
> faculties and was incapable of forming the specific
> intent required for first degree murder.

Id. (internal citation omitted).

The PCRA Court concluded that the challenged
instruction was consistent with the suggested standard jury
instruction, but merely provided an additional clarification for
the jury, which was proper based upon a trial court's broad
discretion in phrasing jury instructions. Id. at *24.
Furthermore, the PCRA Court noted that the jury was later re-
instructed during deliberations on the voluntary intoxication
defense, in which the trial judge quoted the model jury
instruction verbatim without including the additional
clarification sentence. Id. Finally, the PCRA Court concluded

that Petitioner could not establish that a reasonable probability
of a different outcome would have occurred because the clear
facts of the case demonstrate that Petitioner acted with the
"coordination, dexterity, and presence of mind to justify the
Jury's conclusion that [Petitioner] possessed the specific intent
to kill." Id. at *27 (citing Whitney v. Horn, 280 F.3d 240 (3d
Cir. 2002)). The Superior Court agreed with the PCRA Court that
the instruction given by the trial judge was consistent with the
applicable law on voluntary intoxication, and therefore no error
occurred. Young II, No. 2070 EDA 2006, Mem. Op. at *14-15.

Magistrate Judge Restrepo relied upon 28 U.S.C. §
2254(e)(1) to find that it was inappropriate to second-guess the
conclusions of the state courts on this issue. Based upon this
presumption of correctness, Magistrate Judge Restrepo reasoned
that "[i]n light of the fact that the trial court did not err in
instructing the jury on the issue of voluntary intoxication, it
cannot be said that counsel rendered ineffective assistance in
failing to object to the instruction." (Rep. & Rec. 26.)

The Supreme Court has stated clearly that "it is not
the province of a federal habeas court to reexamine state-court
determinations on state-law questions." Estelle v. McGuire, 502
U.S. 62, 67-68 (1991). Under the circumstances, it cannot be
said that the Pennsylvania courts' findings were "contrary to"
federal law or an "unreasonable determination of the facts" which

would warrant relief under § 2254(d). It is well settled under federal law that "a single jury instruction may not be evaluated in artificial isolation; rather, it must be evaluated in the context of the overall charge." Middleton v. McNeil, 541 U.S. 433, 437 (2004) (citing Boyde v. California, 494 U.S. 370, 378 (1990)). The duty of the trial court in fashioning a jury instruction is to provide a clear articulation of the relevant legal criteria. United States v. Goldblatt, 813 F.2d 619, 623 (3d Cir. 1987) (citing Bollenbach v. United States, 326 U.S. 607 (1946)). In discharging this duty, however, a trial court is empowered with discretion to determine the particular language to be used in fashioning the instruction. Id. (citing United States v. Bailey, 451 F.2d 181, 183-84 (3d Cir. 1971)).

Here, the PCRA Court reasoned that the additional "clarification" language on voluntary intoxication was presented in the disjunctive form, meaning that it was not essential to the instruction. Furthermore, the PCRA Court noted that the potentially erroneous instruction was corrected when a re-instruction was provided during deliberation. When viewing the allegedly defective language in the scope of the overall jury instructions, the Pennsylvania state courts' conclusion that the charged instruction was not defective is not contrary to federal law. As the voluntary intoxication instruction was not erroneous, the failure to object to such an instruction does not

fall below the objective standard of reasonableness necessary to satisfy the deficient performance prong of the Strickland test. Relief under Strickland is not available where counsel failed to raise a meritless claim. See Strickland, 466 U.S. at 691. Therefore, Magistrate Judge Restrepo was correct in deferring to the conclusions of the Pennsylvania courts on this issue and finding that the jury instruction was not so deficient that a failure to object qualifies for an ineffective assistance claim.

Petitioner contests the conclusion that an objection to this instruction was not warranted, however, Petitioner does not address the supposed impropriety of the relevant instruction. Rather Petitioner seemingly argues that his counsel was ineffective for selecting to pursue a voluntary intoxication defense when a self-defense theory would have been more appropriate. In essence, Petitioner argues that his attorney's entire trial strategy was flawed because it focused on voluntary intoxication, which according to Petitioner, is a "legally impermissible" defense under Pennsylvania law. (Petr.'s Objs. to Rep. & Rec. 10.) Petitioner argues that because the voluntary intoxication defense was "impermissible," then this strategy could not have been reasonable because it was really "no strategy whatsoever." (Id.)

Petitioner is correct to the extent that he asserts that voluntary intoxication is not recognized as a complete

defense under Pennsylvania law. Voluntary intoxication, a
species of diminished capacity, is a limited defense, which
serves to negate the element of specific intent for first degree
murder but does not exculpate a defendant from criminal liability
entirely. Commw. v. Gibson, 951 A.2d 1110, 1131-32 (Pa. 2008)
(citing Commw. v. Taylor, 876 A.2d 916 (Pa. 2005)). "Thus, a
defendant asserting either defense admits responsibility for the
underlying action, but contests the degree of culpability based
upon his inability to formulate the requisite mental state." Id.
(internal citations omitted).

The Pennsylvania Supreme Court has recognized, however,
that this defense is appropriate under circumstances where a
defendant "admits responsibility for the underlying action, but
contests the degree of culpability based upon his inability to
formulate the requisite mental state." Id.; see e.g., Commw. v.
Spotz, 896 A.2d 1191, 1218 (Pa. 2006) (recognizing that voluntary
intoxication is an appropriate defense in circumstances where a
defendant will concede liability for a murder but serves to
negate the specific intent for murder).

With respect to the reasonableness of the chosen trial
strategy to pursue voluntary intoxication over self-defense,
Petitioner's counsel testified at the PCRA evidentiary hearing as
follows:

> Q:   Did you-do you recall telling Mr. Young that

you would pursue the self-defense theory at
trial, that you would present evidence on
that?

A:    I remember having discussions with him, and
this was something that was evolving during
the course of instructions as far as
strengths of theories of the case, and I know
this was a bone of contention with him as far
as I know, you know, way of presentation and
how to present it, and what the evidence
might show versus what I felt was the
stronger intoxication defense. And you
always have a problem of one diluting the
other, and I made the decision we would try
and keep it in the background by getting some
evidence in but always going with the
intoxication defense as our number one
defense.

Q:    Now, with regard to those, did Mr. Young
specifically ask you, maybe not in those
words, but did he specifically ask you the
most important thing to him was the self-
defense theory?

A:    No.

Q:    What was the most important thing to him as
far as the defenses?

A:    Defense was he was aware that it was our
decision. I kept him appraised that it was
always shifting as far as what he wanted to
go with; and at some point, the decision was
made that that was only going to weaken any
defense that was presented. We had to choose
one that I felt was his best to go with, and
ultimately it was decided that it was going
to be the intoxication defense. That the
self-defense, although I know he always
wanted to hold that out there, I would try to
get something in if possible to get
instruction to the jury, although I didn't
feel it was the strongest thing to go with.

Q:    And that was your state of mind prior to
trial, prior to openings, that in your mind
the voluntary intoxication defense was the
stronger one?

A:    Yes, in fact, I laid it out as such but tried
to leave the door open that they may hear
evidence of a confrontation although there
wasn't a whole lot of evidence that I felt

would support that in the jury's mind to go
with that.

(PCRA Hearing Tr. 46-47, Nov. 16, 2005.)

Based upon the foregoing testimony, it is evident that
Petitioner's counsel considered both theories and selected the
option which he felt had a legitimate chance of success. Based
upon the strong presumption that counsel's conduct is within a
reasonable range of professional discretion, Petitioner bears the
burden of overcoming this presumption to show that "under the
circumstances, the challenged action 'might be considered sound
trial strategy.'" Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir.
1996) (citing Strickland, 466 U.S. at 689).

Therefore, Petitioner has failed to establish that his
counsel's strategy in primarily pursuing a voluntary intoxication
defense while leaving the door open for an alternative defense by
presenting evidence to establish self-defense was an unreasonable
trial strategy. See generally Lewis, 581 F.3d at 109 (finding
that failure of defense counsel to present self-defense theory
was reasonable strategically where it would conflict with an
alternative defense of alibi).[10] Based upon this analysis,

---

[10] Petitioner seemingly attempts to assert the failure to
present evidence on self-defense as a separate claim in his
objections to the Report and Recommendation. As discussed above,
however, Petitioner's Self-defense Instruction Claim is
unexhausted and procedurally defaulted. Therefore, it is
unnecessary for the Court to consider the merits of Petitioner's
argument that self-defense was the appropriate theory of his case
for purposes of this Memorandum.

Magistrate Judge Restrepo's recommendation to dismiss the Voluntary Intoxication Instruction Claim is adopted.

    2.    Expert Testimony Claim.

    Magistrate Judge Restrepo adopted the conclusions of the Pennsylvania courts that Petitioner failed to establish a cognizable ineffective assistance of counsel claim based upon the failure to present expert testimony on a diminished capacity defense.  Prior to trial, Petitioner had obtained an expert opinion report from Dr. Frank Dattilio (the "Dattilio Report") which found that Petitioner was "under a condition of diminished capacity due to significant psychopathology caused by untreated attention deficit/hyperactivity disorder exacerbated by drug use."  Young I, Mem. Op. at *45.  The findings of the Dattilio Report were confirmed by a report provided by Dr. Carla Rogers (together with the Dattilio Report, the "Expert Reports").  Id. Petitioner argued that his trial counsel's failure to utilize the Expert Reports to pursue a diminished capacity defense constitutes an ineffective assistance claim.

    Petitioner's counsel was questioned at the PCRA evidentiary hearing regarding his failure to use the Expert Reports and supporting testimony.  He provided the following response to justify his decision:

        Q:    Did you ever consider using Dr. Dattilio for that
              purpose?
        A:    No.
        Q:    Why not?

42

A:  I had a decision to make as far as what I felt was our best defense theory of the case. And I believe when I filed the notice of insanity or mental infirmity, we were initially going to pursue a diminished capacity. We got into the Commonwealth wanting to put on an expert to refute that, which I felt was more damaging than going strictly with the intoxication defense, so I made the decision that that's what we would do.

Q:  Okay. And that actually gets into another area with regard to the diminished capacity. But, specifically with regard to the issue on self-defense, why did you not consider using Dr. Datillio to opine about the defendant's reaction to events in the room to support his subjective belief under a self-defense theory?

A:  Because calling him as a witness I think would have exposed us to then allowing the Commonwealth to rebut that through their own witness, and I think the information that would have [come] out would have been more damaging from the Commonwealth's expert and also diminish our intoxication defense, which I felt was our strongest strategy.

Q:  Okay. I guess now I'd like to delve more into the diminished capacity issue. Did you discuss Dr. Dattilio's report with him?

A:  Yes.

Q:  What - - did you discuss any concerns with him about his report?

A:  Specifically with Mr. Young?

Q:  Right, the fact that you believe that Dr. Dattilio's report did not make out diminished capacity?

A:  Yeah, that was a concern of mine, the fact that I believe it was Dr. Dattilio even testified to here today that a sociopath was a big concern of mine, how that would be viewed by a jury particularly in light of the Commonwealth being able to rebut that with their own expert.

Q:  So are you saying the reason that you did not use Dr. Dattilio was because of the - that the sociopathic aspect of Mr. Young would have come out?

A:  That's one of my concerns. I also had him evaluated by Dr. Kessel, who basically confirmed the same thing, but I didn't have it in the report. And Dr. Dattilio examined him, basically

confirmed what Dr. Kessel was saying, and then I
made a further determination after the
Commonwealth would have been allowed, I believe,
to use their expert, we pursued the diminished
capacity.  I withdrew that and decided to go
strictly with what I felt was our strongest
defense was the intoxication defense.

(PCRA Hearing Tr. 70-72, Nov. 16, 2005.)

The PCRA Court concluded that based upon this
testimony, the decision not to use the Expert Reports or
corresponding testimony was "not only a perfectly reasonable
trial strategy, but probably a preferable one." Young I, Mem.
Op. at *47.  The PCRA Court reasoned that Petitioner's counsel
had a legitimate concern that the Dattilio Report and
accompanying testimony could have weakened Petitioner's defense
based upon the diagnosis of Petitioner as a "sociopath" being
revealed to the jury.  Id.  Therefore, the PCRA Court found that
there was a reasonable basis to support Petitioner's counsel's
decision to forgo use of the Expert Reports and the diminished
capacity defense.  Id.  The Superior Court agreed with the PCRA
Court that this decision represented a "perfectly reasonable
trial strategy" and adopted the PCRA Court Opinion on this issue.
Young II, No. 2070 EDA 2006, Mem. Op. at *14-15.

Magistrate Judge Restrepo approved of the conclusions
of the PCRA Court and the Superior Court, and classified these
conclusions as findings entitled to deference pursuant to §
2254(e)(1).  See generally Duncan, 256 F.3d at 196.  Magistrate

44

Judge Restrepo reasoned that the deference to be paid to such factual findings, specifically the PCRA Court's determination of trial counsel's credibility, along with the highly deferential standard of review applied to decisions of counsel under Strickland, dictate that Petitioner failed to satisfy the deficient performance prong under Strickland. (Rep. & Rec. 24.) Magistrate Judge Restrepo held that the findings of the state courts should be approved because they were not "contrary to" federal law or an "unreasonable determination of the facts," and therefore habeas relief should be denied under 28 U.S.C. § 2254(d). (Id. at 24-25.)

Magistrate Judge Restrepo correctly concluded that the findings of the state courts should be approved and adopted by this Court with respect to the Expert Testimony Claim. The PCRA Court, and by extension the Superior Court, reasoned that Petitioner's counsel's decision not to pursue the diminished capacity defense through the use of the Expert Reports was due to Petitioner's diagnosis as a "sociopath" and the potential for the Commonwealth to provide damaging testimony through its own expert. This type of tactical decision does not fall below the objective reasonableness standard as required under Strickland.

Even if this decision qualifies under the deficient performance prong under Strickland, in light of the substantial evidence submitted to the jury, particularly Temples' testimony,

there does not appear to be a reasonable probability that the
outcome would have been different absent this professional error.
See Jacobs, 395 F.3d at 109 (rejecting ineffective assistance of
counsel claim for failure to proffer expert testimony since no
reasonable probability existed that defendant would not have been
convicted even if expert testimony had been supplied to the jury
because of witness's testimony that defendant admitted to the
homicide); United States v. Bracciodieta, 335 Fed. Appx. 231, 235
(3d Cir. 2009) (non-precedential opinion) (denying appeal for
claim of ineffective assistance based on counsel's decision not
to call a psychiatric expert during a sentencing hearing on the
basis that it was not likely to have created a different outcome
where the psychiatric report did not unequivocally establish that
defendant's bipolar disorder caused his criminal conduct).
Therefore, Magistrate Judge Restrepo's recommendation to adopt
the Pennsylvania state courts' decisions as being consistent with
federal law is appropriate under 28 U.S.C. § 2254(d).

Petitioner objects to Magistrate Judge Restrepo's
conclusion that the failure to utilize the Expert Reports was a
reasonable trial strategy because it entailed a decision to
pursue a voluntary intoxication defense theory over a self-
defense theory. Petitioner contends that this is not a
cognizable defense under Pennsylvania law because it serves only
to negate the element of specific intent, whereas self-defense is

a complete defense under Pennsylvania law.

Petitioner's argument is inapposite for two reasons. First, as explained in detail above, Petitioner's counsel was entitled to make the reasonable tactical decision to pursue voluntary intoxication as the primary defense and present self-defense as an implied, secondary defense. This was done to prevent confusion of the jury based upon a reasonable professional judgment, and the fact that voluntary intoxication is an imperfect defense does not disqualify it from being a primary trial strategy.

Second, Petitioner's counsel specifically testified that an alternative reason for not presenting the Expert Reports was the potential negative ramifications of admitting such evidence to the jury, specifically Petitioner's characterization as a "sociopath" and potential rebuttal expert testimony from the Commonwealth. These two independent grounds form a reasonable basis for Petitioner's counsel to pursue the defenses in accordance with the Strickland standard. Therefore, Petitioner's objection is overruled and Magistrate Judge Restrepo's recommendation to dismiss the Expert Testimony Claim is adopted.

3. No Adverse Instruction Claim

The final ineffective assistance claim addressed by Magistrate Judge Restrepo was Petitioner's counsel's not objecting to the failure of the trial judge to give a "no adverse

47

inference" instruction to the jury.[11]  Petitioner elected to waive his right to testify, however, he was informed on two separate occasions that the "no adverse inference" instruction would be given in the event he elected not to testify. Petitioner had the following direct dialogue with the trial court regarding this instruction:

> Trial judge:   Do you also understand that if you do not testify, I will instruct the jury that they may not consider that as evidence against you?
> Petitioner:    Yes.

(Trial. Tr. vol. 9, 1878:10-14, June 28, 2001.)  During a subsequent discussion regarding anticipated jury instructions, Petitioner's counsel and the trial judge had the following discourse:

> Petitioner's attorney:   Your Honor, no real objections or problems other than some distinctions from what we had covered in conference.  We had covered in conference, Judge your intention to charge the defendant - no inference from the defendant not testifying, I don't know if you mentioned it this morning.
> Trial judge:             Yes, I did not specifically mention that, but I will . . . . [O]kay, I will definitely be giving that, of course.

---

[11]    "A 'no adverse inference' instruction directs the jury that they may not draw any adverse inference from the defendant's failure to testify in his own defense, because the defendant has the absolute right not to testify if he so chooses.  Commw. v. Stanley, 830 A.2d 1021, 1022 n.1 (Pa. Super. Ct. 2003).

(Trial Tr. Vol. 9, 1880-1881, June 28, 2001.) During the final charge to the jury, the trial court omitted the "no adverse inference" instruction and Petitioner's counsel failed to object. At the PCRA evidentiary hearing, held on November 16, 2005, Petitioner's counsel conceded that he did not realize that the "no adverse inference" instruction had been omitted.

The PCRA Court recognized that no strategic purpose could have existed for Petitioner's counsel's failure to object to the absence of this instruction. Therefore, the PCRA Court addressed the question of whether the result of the proceeding would have been different if the "no adverse inference" instruction had been given. The PCRA Court referenced the fact that at two prior points in Petitioner's criminal proceedings, the jury had been instructed with respect to the prohibition against drawing an inference from Petitioner's failure to testify. During the jury selection process, the trial judge explained the following to the jury panel:

> There is another point of constitutional law that I wanted to explain to you. **A defendant does not have to produce evidence in his defense, neither does he have to take the witness stand. This must be clearly understood and accepted by you.**
> The defendant has a constitutional right to say you have made the charges district attorney, you have the burden of proving them. Go ahead and try to do that. **You must understand that a defendant does not have to testify.**
> He does not have to produce evidence, **and the trial jury must not draw any inference against the defendant if that turns out to be the situation in this**

case.

> . . . .
> Some [of] you might say to yourselves, well,
> before I could make up my mind, I would have to hear
> both sides. That is not proper in a criminal case
> because I've already - as I've already instructed you,
> a defendant does not have to present evidence. **He does
> not have to take the witness stand himself. He does
> not have to present his side, and the jury cannot hold
> it against him.** The burden is on the Commonwealth to
> prove a defendant guilty beyond a reasonable doubt by
> its own evidence.
> If the Commonwealth's evidence does not convince
> the jury that the defendant is guilty beyond a
> reasonable doubt, the verdict of the jury must be not
> guilty **even though the defendant did not take the stand**
> and he presented no evidence.

(Trial Tr. vol. 1, 12-14, June 11, 2001.) (emphasis added).

After the jury was selected and sworn, the trial court instructed

them:

> But, as I told you before, **the defendant has no
> obligation to offer evidence or to testify.** Under the
> law, the defendant is presumed to be innocent and has
> the right to remain silent and the burden is on the
> Commonwealth to prove the defendant guilty beyond a
> reasonable doubt.

(Trial Tr. vol. 4, 870-871, June 21, 2001.) (emphasis added).

Based upon these previous instructions, the PCRA Court concluded

that no prejudice resulted from the failure to give the "no

adverse inference" instruction. Alternatively, the PCRA Court

found that prejudice did not exist in light of the overwhelming

evidence of Petitioner's guilt presented during trial.

The Superior Court affirmed the denial of Petitioner's

ineffective assistance claim. The Superior Court agreed with the

PCRA Court's determination that Petitioner could not establish

prejudice under the second prong of the <u>Strickland</u> test. The
Superior Court reasoned that "although the trial court
inadvertently omitted the 'no adverse inference' instruction, it
did unequivocally instruct the jury before selection and when
sworn that they may not draw any adverse inference against the
defendant for failing to testify." <u>Young II</u>, 2070 EDA 2006, Mem.
Op. at *13. The Superior Court further noted that "strong
evidence of guilt" was presented at trial, including Temples'
testimony and corroborating physical and forensic evidence. <u>Id.</u>
The Superior Court concluded that in light of the preliminary "no
adverse inference" instructions given to the jury coupled with
the caliber of evidence adduced at trial to show Petitioner's
guilt, it could not conclude that the jury's verdict would have
been different if the "no adverse inference" instruction was
given. <u>Id.</u> at *13-14.

　　　Magistrate Judge Restrepo accepted these findings as
correct under § 2254(e)(1), and concluded that Petitioner failed
to present clear and convincing evidence to overturn the
conclusion that the outcome of the proceedings would not have
been affected by the "no adverse inference" instruction. (Rep. &
Rec. 30.)

　　　Petitioner objects to Magistrate Judge Restrepo's
conclusion, but only reiterates that he was entitled to the "no
adverse inference" instruction. In light of the deferential

standard applicable to state court determinations under §
2254(d), Petitioner has failed to satisfy his burden of showing
that the Pennsylvania courts' decisions were contrary to
Strickland. Therefore, the Court will adopt Magistrate Judge
Restrepo's recommendation that the No Adverse Inference
Instruction Claim be dismissed.

4. Limiting Instruction Claim

Magistrate Judge Restrepo did not address the Limiting
Instruction Claim as he found that it was unexhausted.
Petitioner alleged that because he was not charged with robbery
or attempted robbery with respect to his initial plan with Gehris
to rob Davis (which was abandoned prior to consummation), that
evidence related to this contemplated robbery should not have
been allowed in the form of testimony from Gehris and Temples.
Therefore, Petitioner argues that his appellate counsel was
ineffective for failing to raise this issue on direct appeal.

The PCRA Court found that the evidence of this
uncharged robbery was properly admitted under Pennsylvania Rule
of Evidence 404(b), as it represented "prior bad acts" consistent
with the criteria of Rule 404(b). <u>Young I</u>, Mem. Op. at *51-52.[12]

---

[12]    The text of Rule 404(b) provides:

(b) Other crimes, wrongs, or acts.

    (1) Evidence of other crimes, wrongs, or acts is
not admissible to prove the character of a person

Furthermore, the PCRA Court observed that Petitioner's counsel

did not request a cautionary instruction with respect to evidence

of the uncharged robbery because he did not want to highlight

this conduct for the jury. Id. Petitioner's counsel testified

to the following at the PCRA evidentiary hearing:

> Oftentimes with cautionary instructions, you highlight
> a, or single out, certain things that you don't want
> the jury - -that you want the jury [sic] to have
> downplayed to the jury; and, subsequently, I didn't
> request a cautionary instruction. I didn't want to
> bring it up any more than I had.

(PCRA evidentiary Tr. 90:17-22, Nov. 16, 2005.) The PCRA Court

found that the decision of Petitioner's counsel not to highlight

this "prior bad act" evidence with a limiting instruction was a

reasonable strategic decision that satisfied Pennsylvania's

---

> in order to show action in conformity therewith.
>
> (2) Evidence of other crimes, wrongs, or acts may
> be admitted for other purposes, such as proof of
> motive, opportunity, intent, preparation, plan,
> knowledge, identity or absence of mistake or
> accident.
>
> (3) Evidence of other crimes, wrongs, or acts
> proffered under subsection (b)(2) of this rule may
> be admitted in a criminal case only upon a showing
> that the probative value of the evidence outweighs
> its potential for prejudice.
>
> (4) In criminal cases, the prosecution shall
> provide reasonable notice in advance of trial, or
> during trial if the court excuses pretrial notice
> on good cause shown, of the general nature of any
> such evidence it intends to introduce at trial.

Pa. R.E. 404(b).

Douglas/Pierce test. Therefore, the PCRA Court concluded that because trial counsel's decision to downplay the uncharged robbery attempt was within the range of professional discretion, Petitioner's appellate counsel's failure to raise this argument on appeal was appropriate. Young I, Mem. Op. at *52-53. The Superior Court affirmed the PCRA Court's conclusion on this issue and echoed that Petitioner's trial counsel had a reasonable strategic basis for electing not to pursue a cautionary instruction. Young II, 2070 EDA 2006, at *17-18 (citing Commw. v. Howard, 719 A.2d 233, 237 (Pa. 1998) ("Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests.")).

As with the decisions of the Pennsylvania courts addressed above, the conclusions of the PCRA Court and Superior Court are entitled to deferential treatment under § 2254(d). First, the factual conclusion of the state courts regarding the reasonableness of Petitioner's trial counsel's decision not to request a limiting instruction is afforded deference under § 2254(e)(1), particularly in light of the determination of counsel's credibility at the PCRA evidentiary hearing. Petitioner has presented no clear and convincing evidence to overturn the conclusion that Petitioner's counsel's decision

54

represented a sensible tactical choice.

Second, the decisions of the PCRA Court and Superior Court are not "contrary to" or an "unreasonable determination" of federal law, which would warrant relief under § 2254(d). In this vein, Petitioner cannot establish that either the deficient performance prong or prejudice prong of <u>Strickland</u> are satisfied. First, the conclusion that the uncharged robbery evidence was admissible under Pennsylvania law is not subject to challenge by this Court. <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (instructing that a federal habeas court is required to accept a state court's interpretation of state law). Second, as explained above, Pennsylvania's <u>Douglas/Pierce</u> framework regarding ineffective assistance claims is consistent with the <u>Strickland</u> standard. <u>See</u> <u>Jacobs</u>, 395 F.3d at 106 n.9 (citing <u>Werts</u>, 228 F.3d at 204). Based upon the consistency between these legal standards, Petitioner cannot demonstrate that the failure to request the limiting instruction constituted ineffective assistance of trial counsel.

With respect to deficient performance, the highly deferential standard afforded to an attorney's strategic decisions precludes a finding that the decision not to pursue the limiting instruction with the goal of downplaying this evidence to the jury constitutes a cognizable constitutional claim. Furthermore, based upon the overwhelming amount of independent

55

evidence of guilt, Petitioner cannot demonstrate that if the limiting instruction had been provided, there was a reasonable probability that the outcome of the trial would have been different. See Youngblood, 547 U.S. at 570. Therefore, since there was no error by trial counsel in failing to request such a limiting instruction, the decision of Petitioner's appellate counsel not to pursue such a claim does not qualify as ineffective assistance of counsel under Strickland. See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999) (finding that habeas petition cannot establish claim under Strickland based on the failure of appellate counsel to raise a claim regarding the absence of a limiting instruction, where such a claim clearly was without merit).

Based upon the foregoing, Magistrate Judge Restrepo's finding that this Limiting Instruction Claim is unexhausted is overruled. The Court concludes, however, that this claim is without merit and will be dismissed.


## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 application, the court must also decide whether to issue a certificate of appealability ("COA"). Under 28 U.S.C. § 2253(c)(1) "an appeal may not be taken to the court of appeals" from the final order in a § 2254 proceeding unless the judge

orders a COA. 28 U.S.C. § 2253(c)(1). A COA is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing 28 U.S.C. § 2253(c)(2)). "To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Id. at 483-84 (internal quotation marks and citation omitted).

Magistrate Judge Restrepo concluded that a COA should not issue in this matter because a reasonable jurist would not find that the resolution of Petitioner's constitutional issues are debatable or wrong. Based upon the analysis set forth above, the merit of Petitioner's constitutional claims would not be considered debatable among reasonable jurists. Therefore, it is appropriate to adopt Magistrate Judge Restrepo's conclusion that a COA not issue in this case.

V. CONCLUSION

With the limited exception as to the exhaustion of

Petitioner's Limiting Instruction Claim, Magistrate Judge Restrepo's Report and Recommendation will be **approved and adopted**, Petitioner's objections to the Report and Recommendation will be **overruled**, Petitioner's habeas petition will be **denied and dismissed**, and a certificate of appealability **will not be issued**.